ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. RUTHERFORD. (No. 7445.)*

(Court of Civil Appeals of Texas. Dallas. Feb. 12, 1916. Rehearing Denied March 25, 1916.)

1. CARRIERS ☞290(1)—CARRIAGE OF PASSENGERS—LIABILITY FOR INJURIES.

Where a carrier failed to keep its car comfortably warm, and plaintiff's wife, who was in a delicate condition, contracted cold, which resulted in an impairment of her health, recovery cannot be denied on the ground that neither plaintiff nor his wife informed the carrier or its servants of the condition of his wife; for a carrier is bound to exercise the highest degree of care practicable for its passengers, and so such notification was not necessary to entitle plaintiff's wife to have the car properly heated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1183; Dec. Dig. ☞290(1).]

2. CARRIERS ☞320(11)—CARRIAGE OF PASSENGERS—ACTIONS—EVIDENCE—JURY QUESTION.

In an action for injuries to plaintiff's wife resulting from cold contracted in an insufficiently heated car, evidence *held* insufficient to raise for the jury the question whether the carrier's servants would have heated the car had they been informed of the wife's delicate condition.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1190; Dec. Dig. ☞320(11).]

3. CARRIERS ☞330—CARRIAGE OF PASSENGERS—CONTRIBUTORY NEGLIGENCE.

Though there was fuel and a stove in the car in which plaintiff and his wife were riding, plaintiff's failure to build a fire in the stove, the car becoming cold, and his wife being in a delicate condition, is not contributory negligence precluding recovery for injuries resulting to his wife from exposure.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1370, 1372, 1373; Dec. Dig. ☞330.]

4. APPEAL AND ERROR ☞742(5) — ASSIGNMENTS OF ERROR—CONSIDERATION.

An assignment of error complaining of the court's refusal to submit an issue to the jury cannot be considered on appeal, where the accompanying statement merely stated that there was abundant evidence to establish appellant's contention; the statement as to the evidence being a mere conclusion.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞742(5).]

5. APPEAL AND ERROR ☞1062(2)—REVIEW—HARMLESS ERROR.

In an action for injuries to plaintiff's wife, who contracted cold in an insufficiently heated car, the refusal of the court to submit the question whether plaintiff had exercised due care in furnishing his wife with suitable clothing for the trip was harmless, where the jury answered in the negative a question whether the wife was negligent in providing herself with suitable clothing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4213; Dec. Dig. ☞1062(2).]

6. DAMAGES ☞132(5)—PERSONAL INJURIES—MEASURE.

In an action for injuries to plaintiff's wife, who contracted cold in an insufficiently heated car, an award of $1,700 damages, one-half of which the jury specified was for damages to the present and the remainder for future damages, cannot be *held* excessive, where the cold settled in the wife's internal organs, causing her to bloat and affected her menstruation and general health.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 376; Dec. Dig. ☞132(5).]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by P. M. Rutherford against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

E. B. Perkins and Daniel Upthegrove, both of Dallas, and R. S. Neblett, of Corsicana, for appellant. Callicutt & Johnson, of Corsicana, for appellee.

TALBOT, J. The appellee, Rutherford, brought this suit to recover damages alleged to have been sustained on account of sickness and injuries caused his wife, Mrs. Rosie Rutherford, by the negligence of appellant in furnishing her, as a passenger, a cold or insufficiently heated car in which to be transported from Hamilton, Tex., to Stephenville, Tex., about the 14th of November, 1913. The evidence uopn the issues raised by the pleadings was conflicting, but sufficient to warrant the following conclusions of fact: On November 14, 1913, the appellee, P. M. Rutherford, and his wife, purchased tickets and boarded one of appellant's trains at Gatesville, Tex., to be carried to Stephenville, Tex. Before purchasing tickets, appellee told the agent of appellant at Gatesville that he had to go to Stephenville and had to arrive there that night. The agent replied, in substance: Go over appellant's line; you can buy a ticket to Hamilton, and there take a train going over appellant's branch road to Stephenville; you will get to Hamilton about 5 o'clock this afternoon and will there be transferred and go right on through. Appellee then bought tickets for himself and wife entitling them to transportation over appellant's roads to Stephenville and boarded the train for that purpose. The train upon which they took passage left Gatesville about 2 o'clock p. m. and arrived at Hamilton about 15 minutes past 5 o'clock of the same afternoon. Just before the train reached Hamilton, the conductor passed through the coach in which appellee and his wife were traveling and told the passengers who were going to Stephenville to remain in that

coach. Appellee then asked the conductor if he would make connection at Hamilton for Stephenville, and informed him that if he would not he would take a train over the Frisco Railway to Comanche. The conductor replied that appellee would be carried over from Hamilton in about 30 minutes. When the train arrived at Hamilton, the coach in which appellee and his wife were riding was put on a side track about 200 or 300 yards from the depot with appellee and his wife and the other passengers bound for Stephenville in it, where the car and passengers remained until about 1 o'clock the next morning. It seems that the car in which appellee and his wife were traveling was to be carried from Hamilton to Stephenville by a freight train which had not arrived at Hamilton when said car was placed on the side track; but of this neither appellee nor his wife was informed, and they remained in the car, thinking it would be pulled out for Stephenville within the time the conductor had informed them they would be carried forward on their journey, until that time had expired. There were no lights and no fire in the car, and after it had remained on the side track for about one hour the appellee went to appellant's depot and told the agent there the condition of the car. The conductor remarked, in effect, that if he (appellee) and his wife expected to be carried to Stephenville they would have to stay in the car, as he (the agent) did not know when the freight train would arrive. This was the first time appellee knew that he and his wife were to be carried from Hamilton to Stephenville by a freight train. There was no porter on the car, and no agent of appellant of any character in charge of it while it remained on the side track. The coach was comfortable when it first arrived at Hamilton and was placed on the side track, but later in the evening the weather became much cooler, and the car got cold. Mrs. Rutherford was suffering from menstruation, and while the car was on the side track she became cold, especially her feet, and very uncomfortable, and other lady passengers complained of being cold. Some time after dark, and while the car was still on the side track, the appellee went out near the railroad track, got some "chunks," and with them and waste paper found in the car made a fire in the stove, and, in the language of the witness, appellee "got the car pretty comfortable, but it didn't last long." The car left Hamilton about 1 o'clock that night and reached Stephenville at about 4 o'clock that morning. There was no fire made in the stove of the car after it pulled out of Hamilton, and appellee's wife was quite cold and complained of suffering pain from the time the car started until it arrived at Stephenville; and as a result of the unwarmed condition of the car she took a severe cold and was made sick.

Mrs. Rutherford testified:

"I caught a severe cold that night. I was not comfortable while in that car because I was cold and suffering. The cold settled in my back and ovaries. The cold left me in a bad condition, and I suffer all the time. The suffering lasted for over a week at that time. I did not see any railroad man in that car from Hamilton to Stephenville, except the conductor. There wasn't any fire in that stove from Hamilton to Stephenville. I heard Mrs. Richardson, an old lady passenger, complaining that she was cold. No railroad man ever asked or inquired as to the comfort of the passengers from the time that car was set out there (at Hamilton), about 5 o'clock in the evening, until 4 o'clock the next morning, when we got to Stephenville."

The agents of appellant in charge of the coach in which appellee and his wife were being transported to Stephenville were not informed of the condition of Mrs. Rutherford, and neither of them knew she was suffering from her monthly sickness.

The appellant denied the facts alleged in appellee's petition, and charged that appellee and his wife were guilty of contributory negligence, which was the proximate cause of the injury complained of, in that neither of them made known to appellant's agents the sick or delicate condition of Mrs. Rutherford; that appellant's agents were ignorant of her condition, and that no request that additional heat be supplied was made; that had it been made known to appellant's agents in charge of the train, upon which appellee and his wife were traveling, that Mrs. Rutherford was suffering with her menstrual period and needed more warmth in the car, it would have been furnished. Appellant further charges that there was provided in the coach in which appellee and his wife were traveling a stove and an abundance of fuel, and that they could have made a fire and kept the coach heated at such a temperature as they desired; that they failed to do this, and were in that respect guilty of negligence contributing to the injuries complained of; that they were further guilty of such negligence in that they failed to provide themselves suitable wraps or clothing in which to travel. The case was tried before the court and a jury, and resulted in a verdict and judgment for appellee in the sum of $1,700.

[1] The first assignment of error is that the court erred in refusing to give the following special charge requested by the appellant:

"You are instructed that the evidence does not show that either the agent of the defendant at Hamilton, or the brakeman in charge of the train from Hamilton to Stephenville, knew or had notice of the claim that Mrs. Rutherford was in delicate health and suffering from female trouble, either at Hamilton while the car was there, or while the car was being transported from Hamilton to Stephenville. And in this connection you are further instructed that if you believe from the evidence that the plaintiff's wife, Mrs. Rutherford, was in delicate health and suffering from female trouble and her monthly sickness at the time she was in the coach at Hamilton, or while traveling from Hamilton to Stephenville, and you further be-

lieve from the evidence that a reasonably prudent person would have made known this condition to the agent at Hamilton, and to the conductor and brakeman in charge of the train from Hamilton to Stephenville, and that plaintiff was negligent in not so doing, and that if such fact had been made known the defendant, through its agents and operatives of the train, would have provided coal or fuel and heat, and would have kept the coach at such temperature as would have prevented any suffering or pain to plaintiff's wife, if they did not, then you will find for the defendant, whether you believe from the evidence that defendant failed to keep fire in the coach, or keep it comfortable for her, or not."

The proposition advanced is that:

"It was a question of fact for the jury to determine, under all the circumstances and evidence in the case, what was the proximate cause of the suffering and injury, if any, endured and received by Mrs. Rutherford, appellee's wife, and whether or not appellee, Rutherford, was guilty of negligence in failing to make known the condition of his wife and request that the car be made comfortable and suitable to her condition, and the court should have submitted this issue to the jury."

Notwithstanding the evidence was insufficient to show that either of appellant's agents knew that Mrs. Rutherford was in delicate health and suffering from menstruation while she was in the car at Hamilton or while she was being transported from Hamilton to Stephenville, there was no error in refusing the special charge in question. Neither the appellee, nor his wife, could be charged with contributory negligence in failing to make known the condition of Mrs. Rutherford, even though had it been done the servants of appellant would have heated and made comfortable the car. In strictly actions for a breach of contract, special damages cannot be recovered unless it is alleged and proved that at the time of the making of the contract the defendant had notice of the special conditions or circumstances rendering such damages the natural and probable result of the breach. The instant suit is not such an action. It is one for a tort founded upon contract. The wrongful acts and omissions charged which resulted in Mrs. Rutherford's injury, and which the evidence was sufficient to establish, constituted actionable negligence on the part of the appellant amounting to a tort, and the rule applicable to special damages does not obtain. It was the duty of appellant as a common carrier of passengers to exercise that high degree of care for the personal comfort and safety of Mrs. Rutherford which a very cautious and prudent person would have exercised under the circumstances surrounding her, and it cannot escape liability for the damage done her as a result of the failure to discharge that duty, upon the ground that she nor the appellee, her husband, made known her suffering condition and requested its servants to do those things necessary to prevent injury to her which the law imposed upon them. The question is not whether the damage done Mrs. Rutherford entered into the consideration of the parties with knowledge of her physical condition before the acts or omissions causing it were done or omitted, but whether such damage was fairly and directly the result of such acts or omissions. Railway Co. v. Redeker, 45 Tex. Civ. App. 312, 100 S. W. 362.

In the case of Railway Co. v. Ferguson, 26 Tex. Civ. App. 460, 64 S. W. 797, the plaintiff sued to recover damages for injuries inflicted upon his wife. His wife was pregnant and a passenger on the railway company's train. Through the negligence of the company's servants an engine or train collided with the car in which Mrs. Ferguson was seated with such force that she was partially knocked from her seat and greatly shocked, jerked, and injured, causing her physical and mental suffering, and resulting in the premature birth of her child. The court instructed the jury to the effect that the railway company owed Mrs. Ferguson the duty to exercise that high degree of care for her reasonable personal safety which a very prudent person would use under the same circumstances about the same matter, and that a failure to exercise such care would be negligence. This charge was objected to, and the proposition contended for by the railway company that, without knowledge of the delicate condition of Mrs. Ferguson, the degree of care imposed by law upon it was that due to all persons in usual and ordinary physical condition, and not such as might have been due to one "in the light of attending circumstances." This proposition was not sustained, and, in discussing the question, the court uses the following language:

"The court gave the proper standard of care; and the degree of care so prescribed, in our judgment, must be exercised by the carrier of passengers in the light of an imputed, if not actual, knowledge that the aged, the infirm, and those in delicate condition may and do constantly travel on the passenger trains of the country. Humanity is heir to many ills and destructive conditions requiring notice and peculiar care, and those commonly and constantly engaged in their transportation for hire ought not to be heard to say in excuse for their negligence, 'We were without notice of the fact.'"

In Railway v. Rushing, 69 Tex. 306, 6 S. W. 834, the objection to the court's charge was that the company's liability was made to depend upon whether the force of the engine was sufficient to throw the plaintiff down, and not whether it was sufficient to throw a person of ordinary physical ability. In disposing of the objection, our Supreme Court said:

"The charge as given is correct in law. A railroad company owes a duty to others besides persons of ordinary physical ability. They are presumed to know that persons * * * old or decrepit travel upon their trains, and they must exercise care accordingly."

But again, in the case of Pecos & N. T. Ry. Co. v. Williams, 34 Tex. Civ. App. 100, 78 S. W. 5, the appellee was a passenger of the appellant, was carried about a mile beyond her station, and put off the train. She al-

leged, among other things, that she was, and had been for a long time prior to the wrongs complained of, a frail and delicate person, and had been afflicted with an ear trouble since her early childhood; that she was compelled, because of her ejection from appellant's train, to walk back to her station, through snow and storm; and that as a direct result of her exposure therefrom she took a severe cold, which resulted in tonsilitis, excruciating pains in her neck and head, and a pus discharge from her ear. The principal controversy arose from the objection presented by the railway company to the averments that appellee was a person of delicate health, unprotected with sufficient wraps, etc., to withstand the storm or rain, sleet, and snow, and had been afflicted with an ear trouble since her early childhood. It was contended, in effect, that, in the absence of notice of such conditions of the person, appellant was not liable for such injuries as may have resulted to appellee "in excess of what would have resulted to a woman in a natural state of health and clothed as one would naturally be expected to clothe herself to make such a trip in such weather." This contention was held to be not well taken, and, in effect, that the allegations of appellee's physical condition, when ejected from appellant's train, her affliction with an ear trouble, and her suffering on account of the exposure to which she was subjected by reason of appellant's wrongful acts were proper and proof thereof admissible, although the appellant had no notice of such conditions. The remarks made in the foregoing cases were quoted and approved by this court in the case of Railway Co. v. Redeker, supra, and the principles of law enunciated therein are applicable to the instant case and make plain the correctness of the court's ruling in declining to give the special charge under consideration.

[2] Again, we are inclined to the opinion that the evidence was insufficient to authorize the submission of the issue sought to be submitted in the charge that appellant's servants, had they known that appellee's wife was suffering from her monthly sickness, would have kept the coach at such temperature as would have prevented any suffering or pain to appellee's wife. The extent of the testimony in relation to that issue is that of the appellant's witness C. E. Main, a brakeman on the train. He testified:

"It is my best remembrance that the fire was kept up and the coach kept warm. I wasn't still keeping up the fire to warm that old lady after she got off at Alexander. If I hadn't thought the coach was warm enough after we left Alexander, I would have put more coal in the stove."

The old lady referred to was a passenger who left the train at the station Alexander on the line of appellant's road between Hamilton and Stephenville, and, according to the testimony of appellee, his wife suffered from the exposure to cold, by reason of being forced to remain and travel in an unheated coach for several hours before the station Alexander was reached.

What we have already said disposes of appellant's second, third, fourth, fifth, and sixth assignments of error adversely to its contention, and further discussion is unnecessary.

[3] The seventh assignment of error complains that the court erred in refusing to give a special charge requested by appellant to the effect that if the coach in which the appellee and his wife were traveling became cold to such an extent as to inflict pain and suffering upon Mrs. Rutherford, and the defendant was negligent in that it did not exercise such high degree of care as a reasonably prudent person would have exercised under the same or similar conditions to have kept the coach warm, and there was a stove in the coach, and there was coal and fuel provided with which the plaintiff, P. M. Rutherford, in the exercise of ordinary care and prudence, could have made a fire and have kept the coach at such temperature as would have prevented any pain or injury being suffered by plaintiff's wife, and in the exercise of ordinary care a reasonably prudent person would have done so, and his failure to do so, if he did fail, proximately caused or contributed to any pain or suffering which Mrs. Rutherford endured, then to find for defendant, whether the defendant, railroad company, was negligent in the first instance or not. We are of the opinion that, even though there was a stove in the coach in which appellee and his wife were traveling and coal and fuel provided for making a fire in it, the law did not impose the burden or duty upon appellee to make use of them for the purpose of heating the coach, in order to escape the charge of having failed to do what a reasonably prudent person would have done under the circumstances to avoid injury. The duty rests upon railway companies to exercise that high degree of care spoken of in the charge refused, to heat their coaches sufficient to prevent suffering and injury to their passengers from cold, and will not be heard to say, when that duty has not been performed and a passenger is injured thereby, that such passenger was guilty of negligence barring a recovery because he did not do the thing to prevent the injury which was imposed by law upon such companies. The special charge was properly refused.

This disposes also of the eighth and ninth assignments of error and further consideration of them is unnecessary.

[4, 5] The court in its general charge instructed the jury, in substance, that if Mrs. Rutherford was too thinly clad for the condition she was in while traveling over appellant's road and in the then state of the weather, and a person of ordinary care would have provided thicker and warmer clothing for such a journey, and the jury should believe she was guilty of negligence in that regard, and such negligence caused the pain

and injury suffered by her, to find for the appellant. In this connection, the appellant requested the court to give a special charge to the effect that if either Mrs. Rutherford or the appellee was guilty of negligence in this respect, and such negligence caused the pain or injury complained of, to find for the appellant. This requested charge was refused, and the court's action in refusing it and in giving the paragraph of the general charge just referred to is by assignments of error 10 and 11, respectively, asserted to be error. It is claimed that the action of the court in giving the one and refusing the other of these charges constitutes reversible error, because the appellant was entitled to a verdict if either Mrs. Rutherford or the appellee, her husband, was guilty of contributory negligence with respect to the clothing she wore or was provided with. A consideration of the assignments is objected to on the ground that there is not subjoined to either of them such a statement in support thereof as is required by the rules. The objection, we think, is well taken. There is no evidence quoted or stated showing negligence on the part of the appellee with respect to furnishing his wife warm and suitable clothing for the trip she was taking. The only portion of the statement, made under the assignments, that relates to the evidence upon the subject, is simply that "there was abundant evidence to show that he (appellee) was negligent in this regard." This is a mere conclusion and wholly insufficient under the rules. We have, however, looked to the evidence contained in the statement of facts and conclude that it was insufficient to raise the issue, sought to be submitted to the jury by the special charge. It is true the trial court submitted such an issue with respect to the conduct of Mrs. Rutherford, but we are of opinion that no error would have been committed had such issue been omitted altogether. But having submitted to the jury the question of whether Mrs. Rutherford was guilty of negligence in failing to provide herself with warm and suitable clothing for the journey she was making, and the jury having found that she was not guilty of negligence in that respect, it is manifest that the court's refusal to give appellant's special charge calling upon the jury to determine whether or not the appellee negligently failed to furnish his wife such clothing did not result in the rendition of an improper verdict and judgment. The refusal of the special charge therefore must be regarded as harmless.

The remarks of counsel for appellee to the witness Walker while interrogating him on cross-examination, and made the basis of the twelfth assignment of error, were doubtless improper; but they were not of such a character as affords any just and sufficient reason for a reversal of the case. The assignment will therefore be overruled.

[6] The verdict rendered by the jury is as follows:

"We, the jury, find for the plaintiff the sum of $1,700.00, to wit, $850.00 as damages to the present time, and $850.00 as future damages.
                    "S. B. Bromley, Foreman."

It is assigned that there is no evidence which shows that the appellee's wife will suffer injury or pain in the future, and that the verdict is excessive and shows that it is the result of ignorance, prejudice, and ill feeling toward the appellant, and is not an expression of the honest opinion of the jury attempting to apply the law as given in the charge of the court to the evidence as detailed by the witnesses.

The testimony bearing upon the nature and extent of Mrs. Rutherford's injuries and suffering is disclosed by the testimony of Mr. and Mrs. Rutherford, and Dr. Langford. Mr. Rutherford, the appellee, testified:

"My wife was suffering from pains from her monthly period. She was suffering before we left Hamilton, and continued to do so for some time. For a month or two I had to take her to her mother's. She caught cold in the car that night, and it settled in her bowels and caused her to bloat. Since then she has had trouble with her menstrual periods every time. First time after that it came on her 12 days early. Before that her periods had been regular. She suffers a great deal with her menstrual periods since; have had to buy medicine, etc., and never had that trouble before then."

Mrs. Rutherford testified, in substance, as follows:

"My menstrual period had just come on me that morning, and I caught cold in that car that night. I was not comfortable while in that car, because I was cold and suffering. The cold settled in my back and ovaries. It left me in a bad condition, and I suffer all the time. Prior to that time, when I was at those periods the suffering lasted from 3 to 5 days. It lasted 9 days that time. The pain I suffered at that time was greater than it was before that time, and has been every time since. Not able to do work now when monthly sickness comes, but could before. Since then pain at periods much greater than formerly. Before then was regular. Since then I come sick too quick all the time, am not regular at all. I never had any trouble like that before that time. My periods are on me much longer now than before. Formerly lasted 3 to 5 days. Now last from 8 to 10 days. Periods come earlier, closer together, last longer, and pain much more intense than formerly. General health affected, and not at all strong now."

Dr. Langford testified:

"It began to get uncomfortable about 7 or 8 o'clock. It was so cold at that time passengers built a fire. I don't know how long fire lasted. The condition of car was such that it would have been very apt to hurt a woman with her menstrual period on. The floor of the car was very cold. When a woman has her menstrual period on, it frequently affects her to get her feet cold. The conditions along that line baffles the doctors; sometimes has one effect and sometimes another. It was pretty cold when we got to Stephenville. It would have done a woman no good to haul her over there that night through that cold. Don't know whether the fire they started went out or not. If a woman has a swelling in her abdomen during her menstrual period, it is caused by congestion of the parts. If this lady had that symptom, she perhaps had congestion of the ovaries."

In view of this undisputed evidence, we do not think we would be warranted in disturbing the verdict. The amount of damages sus-

tained by appellee was a question of fact for determination of the jury, and, while we regard the sum awarded as large, we are not prepared to say that it is unsupported by the evidence, either as to the amount allowed as having been sustained up to the time of the trial, or as would probably be sustained after that time. The testimony is sufficient to show that about 12 months had elapsed from the date Mrs. Rutherford suffered the injuries complained of up to the time of the trial and the delivery of the testimony. During that time, according to her testimony and the testimony of her husband, the irregularity and increased length of her menstrual periods caused by the negligence of appellant continued without abatement, and she suffered as a result thereof intense pain. The result of appellant's negligence and the pain incident thereto having continued for such a length of time without any appreciable abatement thereof, it cannot be said as a matter of law that there was no foundation in the evidence for the award of future damages.

Believing that the evidence supports the verdict and that none of appellant's assignments disclose reversible error, the judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

184 S.W.—45     *Application for writ of error pending in Supreme Court.